Case number 11-0725 consolidated with 11-0750 in regards to the Estate of Richard B. Henry. For the record, Edward Kolevinskas on behalf of Appellant Theory Wimple. And Peter Schmidl on behalf of J.P. Morgan Chase Bank, which was the guardian of the Estate, now is the trustee of the trust. Are you going to be arguing for both parties? I'm sorry, would you say your name again? David Swick for Miroslav Zavruka, co-appellant. I bequeath my time to add. All right, fine. Probate matter, you bequeath time. All right, you may proceed. Good morning. We're asking this court to reverse the trial court's order dismissing my client's petition to contest the will and trust of Richard B. Henry. The standard of review here is de novo because it involves dismissal of an action. And also because it involves the interpretation of the statute, 755 ILCS 5-11A18-5. We are confining our argument to count three of my client's petition to contest, which is a contest of the purported trust of Richard Henry on the basis of violation of an Illinois public policy. We believe that the trust violates Illinois public policy because the court that authorized its creation did not follow guidelines set forth in 755 ILCS 5-11A18-5, in that it did not conduct any type of a hearing with respect to Mr. Henry's testamentary wishes. Now, when you say that, you're referring to the probate court, correct? I'm referring to the guardianship court. So you're saying the guardianship court did not conduct an evidentiary hearing? Not on the creation of the trust. It did not. What did it do? It did conduct an evidentiary hearing with respect to citations to recover assets that were filed against Mr. Swick's client, Mr. Zawarruka. Aren't you appealing Judge Coghlan's decision? We are. And didn't we have a previous appeal involving Judge Riley's hearing? We did. And within that opinion, this court stated that, and I'll quote, under petitioner's view of the law, if appellants seek to challenge the court's authority to approve the trial court's order, their proper recourse is to file a will contest upon the death of the testator when their rights, if any, under Mr. Henry's prior will would have vested. Now, that has to do with the fact that what we were talking about was a guardianship for his living trust. And that there was no vesting of interest in the living trust during the lifetime of the testator. That's correct. And so that when the testator died, then there would be an argument that there would be a vesting of the rights of the beneficiaries of his estate, and only then would they have the right to go forward and contest that. But I think you fuzz the line between that statement and the purpose for the statement in the opinion, because all that opinion basically says is until the testator dies, there is no right to contest on behalf of somebody who would only take after the death. That's correct. But that doesn't mean that there necessarily would allow you to reopen the issues decided in the guardianship. Well, we're not seeking to reopen any issues. We're seeking to have our opportunity to present our version of what Mr. Henry's testamentary intent was. What did you do in the Henry IV when you cross-petitioned to admit the subsequent 2004 will? The prior 2004 will. Yes. What did you do when you cross-petitioned? We sought to have that will admitted to probate. And what did you seek to have it admitted based upon? Based upon what Mr. Henry's testamentary intent was at the time. And didn't we affirm that decision to deny your cross-petition to admit the 2004 will? Absolutely. Why are you not bound by that decision? Because a will contest is a separate action under the Probate Act. I understand. But if you were a party, I'm sorry. Didn't you essentially allege in your cross-petition a will contest? No. No? No. What did you allege? We allege that the 2004 will was the valid last will of Mr. Henry. But didn't you also say that the will that was created you were contesting didn't reflect the testamentary intent? That would be essentially what the argument would be. But Illinois case law has long held that a will contest is a separate proceeding and all of the issues that could have been tried in the admission of a will to probate can be tried again de novo. We get two bites of the apple. That's Illinois law. That's how the Probate Act works. Well, can you get a second bite at this particular apple? And that is the following, that after 2003, at the end of 2003, can you get a second bite at the guardianship court's finding based on the testimony or the evidentiary materials of three different doctors who stated that Mr. Henry lacked any testamentary or actually not testamentary. I misspoke. He lacked any capacity to produce a subsequent disposition of his property. That's not exactly what the court held, and I would argue this is our first bite at that apple because we were precluded from participating in the proceedings that generated that finding. We couldn't cross-examine any of the three experts that were put on. We couldn't present our own experts to rebut their testimony. We couldn't present lay witnesses who would testify that he had testamentary capacity at the time he signed the 2004 will. So this isn't a second bite for us. We're trying to get into court to make our argument, and we, to date at least, have been precluded at every step of the way. Well, aren't you bound by our previous opinion? In other words, how can we go back now and say that the guardianship court had the authority to decide this issue of whether he had any capacity to create a subsequent will when we affirm the decision of the guardianship court to do that? The guardianship court did not hold that he did not have capacity to create a subsequent will. No, but what did it determine? That after a given date, he was incompetent to do anything regarding his financial affairs. True? True. However, even if that is exactly what the guardianship court held, which I contend it isn't, that someone who is held to be incompetent can still have the capacity to make a will. There's something called the lucid moment that's long been recognized by Illinois law. The court's finding was since December 3rd, December 2003, until the day of the hearing, since then, I would be inclusive that from December to the date of the hearing, he lacked capacity. So that would knock out any lucid moments. Again, I don't think it would. I think that we should have the opportunity to present evidence that, number one, he was competent on the day that he signed his 2004 documents, and, number two, that those documents reflect his intent. You're saying that you're going to re-litigate this issue about the 2004 will? No. Well, you use the term re-litigate. We haven't had the opportunity to litigate, so it wouldn't be a re-litigation. We've been foreclosed from presenting evidence. What evidence are you going to be presenting? What is it in your complaint of the will contest do you allege? What facts do you allege that will establish what you're trying to do? Well, we allege that he had testamentary capacity. And what is it based on? Every complaint, every petition, every will contest has to be based upon facts. Legal conclusions are not acceptable in any area of the law. Absolutely. So what are the facts that you're going to present? That is not a legal conclusion, we contend. We contend that we do have witnesses. We have the attorney who drafted the will who would testify that he prepared it according to his instructions. He thought he had testamentary capacity. He was there when he signed it and confirmed that this was his intent. That attorney has never testified in any proceeding yet because we were not allowed to participate in the citation proceedings. We were held not to have standing with respect to the estate plan petition and the guardianship. But when we affirmed the guardianship court's actions in effectuating the intent by allowing this new will to be created, this new codicil, and this new trust, weren't those all subject to being appealed at that time? We did appeal those. And what happened in this court? We were found not to have standing to participate in the appeal. And this court stated that our time would come after Mr. Henry died when we could then contest the documents pursuant to the will contest provisions of the Probate Act. That's what we're doing. We're following the road map that the court drew for us in Henry II. And what about Henry IV? You're saying your petition in Henry IV, your cross petition, wasn't really, in effect, a contest. I'm saying that that's what Illinois case law says, that we are allowed to appeal an order admitting a will to probate and then carry on a will contest after that. But do you have any cases where there was an admission of a will to probate with a cross petition to admit a subsequent will to probate? I mean, everyone that's involved here has been involved in these proceedings. But do you have any case that allows you to contest the will after you cross petitioned basically using the same allegations? Didn't you use the same allegations? The cross petition to admit the will simply stated that Mr. Henry died on a certain date and he left a will dated 2004, which was his valid will. Okay. I guess I'm going to have to go back then to your will contest petition. What facts do you allege that will be presented to the probate court to that the testamentary capacity or intent of Mr. Henry is in the 2004 will? The fact that he had testamentary capacity, that is a factual allegation, that he had testamentary capacity at the time he signed the 2004 will. Well, we have a subsequent will, which is presumed valid will now, right? So how are you going to attack the 2008 will? The factual allegations are that no evidence was presented before the guardianship court regarding Mr. Henry's intent, and had it been, the 2004 will would have found to have been his testamentary intent. Well, the 2008 will followed the provisions of the 1999 will, which is as far as the trial court is concerned, the last time he had testamentary capacity was a hearing required. The trial court never ruled on whether or not he had testamentary capacity. Testamentary capacity is a low, low threshold. You need to know the natural objects of your bounty, you need to know the nature and extent of your estate in a general manner, and you need to have a plan for disposing of your estate. That's different from being able to transact business, which is a much higher standard of capacity. Someone who lacks the capacity to transact business can still have the lower threshold of capacity to write a will. Well, when the court allowed this 2008 will to be created by Chase, what did it decide? Which we have affirmed. The court granted the petition to create that estate plan. And what did the court essentially determine at that time? How could the court allow this new will, codicil, and trust to be created in 2008 unless it concluded it was the testamentary intent of Mr. Henry? The proceeding to create the 2008 documents had no evidence presented during the course of that proceeding. Why would a court even allow this procedure if it didn't go into the factual underpinnings of allowing it in the first instance? The time that it went into any factual underpinnings was in a proceeding for citations to recover assets. My client was not allowed to participate in those proceedings and put on any evidence with regard to Mr. Henry's capacity in 2004. Mr. Levinson, let me ask this. When you had your cross-petition to admit the 2004 will, were you precluded from calling any witnesses that you would have and presenting any evidence you would seek to present that would have demonstrated that the 2004 will reflected his intent? Was I precluded from presenting evidence? Yes. I don't know the answer to that question. Well, did you try to? No. Why not? Because the petition to admit a will to probate is a very pro forma procedure. It's the first step in the process. But you knew you were saying don't take it from column A, that is the 2008. Rather, give us the 2004. And so it's not pro forma where there are competing wills. Somebody has to make a choice about which will to admit. And so why wouldn't you have sought to introduce your evidence at that time? Because we knew that we had the opportunity to pursue that same issue in a will contest. But basically you didn't attack the factual underpinnings in your response to the motion to dismiss. In other words, you basically made a legal defense, and you did not contest any of the facts. Well, the factual findings of the court. Of which court? The disabled guardian, the disabled estate court. Well, we asked for the opportunity to present those facts. Well, actually in your response you basically made legal, you didn't ask for that opportunity. You just made, in your petition you said it's void against public policy, that it was invalidly executed, and the trust is against public policy. You didn't say anything about him having a lucid moment. We alleged that he had testamentary capacity at the time that he signed the 2004 will. That's the factual allegation. And who would be the witnesses that would testify to that? Because I'm assuming in your complaint you sent out those facts. We did not list the witnesses specifically, but like I said, the attorney who drafted the will would be one. The witnesses to that will would be another. We have witnesses. Weren't any of those witnesses presented at the time that Chase came in to try to effectuate his intent by creating the 2008 documents? We weren't allowed to present them at that time. We were held not to have standing to present them. That was at the time of the guardianship. That's correct. The question that I want to get back to is there was another proceeding following that. Correct. Where you were seeking affirmatively in your cross-action to introduce the 2004. Correct. And by that, as part of your opposition to the 2008 will being admitted, you're saying not this. We think the 2004 will reflects the intent, but didn't seek to introduce any evidence at that time to support that. No, because the case law says that an order admitting a will to probate is not final as to the validity of a will. All issues may be contested at trial de novo in a will contest. What is the point of a cross-petition? What were you filing that for? What was decided against you when you cross-petitioned? The court decided that on a prima facie basis, it believed that the 2008 will was valid. Any time a will is admitted to probate, it has to be admitted to probate first before a contest can be filed. But you tried to have admitted the 2004 will. Why wasn't that admitted? Because the court decided that on a prima facie basis, the 2008 will was valid. That doesn't foreclose us from filing a will contest. The case law is absolutely clear on this point, that the will contest is your second bite at the apple. The order admitting a will to probate isn't final. But is there any case that you found that has any sort of factual similarity to this case with four appeals on numerous issues? And I guess what I'm asking you is do you believe that you can contest a finding that has been entered by the guardianship court that was affirmed on appeal that held that after 2003, Mr. Henry did not have the capacity to in any way dispose of his bounty? Again, that's not what the trial court held. The guardianship court? The guardianship court did not hold that. What did the guardianship court hold? The guardianship court held that he was unable to transact business after a certain date in 2003. It did not hold that he lacked testamentary capacity. If it had made that finding, this may be a different case. But we were not allowed to even participate to present evidence and contest any of the evidence. And I would agree that I don't think that the courts in the guardianship capacity could have determined that at that point. But there are certain issues I think that it certainly did decide. But I don't know what facts or what it is that you're going to try to show other than what you've already alleged in your cross petition that was essentially what your will contest is. But you're saying it's not. But if we were to compare the documents and they essentially allege the same thing, would you then have the same position that you're taking now? Absolutely. We have an absolute right as beneficiaries under the prior will to contest the 2008 will so long as we filed our contest timely, which we did. And that's what the case law has held for decades. And just, again, how would you summarize your you say that the proceedings were void as against public policy? We think that the 2008 documents are void as against public policy because the guardianship court did not hear any evidence with respect to what Mr. Henry's testamentary intent was. And the statute says that the court must, it's mandatory, must follow the ward's intentions as best as they can be ascertained. It didn't hear any evidence when it was considering the 2008 documents whether or not this was actually Mr. Henry's will. But the court had sat on prior hearings in the same case and had some institutional knowledge of what took place before. Prior hearings that we weren't allowed to participate in or present any contrary evidence. And even in the state plan document petition proceeding, we were held not to have standing to even contest what the guardian was doing. So we have to have an opportunity at some point. And in Henry II, the court stated that your opportunity will come when Mr. Henry dies and you file a will contest. Again, we follow that roadmap. That's where we are now. We should have the ability to. So four is essentially, I mean, you're saying that there's nothing there that binds any of us in any way. Correct. All right. Thank you. Thank you. Good morning. Good morning. The notion that they did not get a chance to participate at the time that the August 8, 2008 will, the state planning documents was presented to the guardianship judge, is simply wrong. The judge's own order. What happened was, is we filed a petition to engage in a state planning on behalf of Mr. Henry after this court, actually during the period of time that this court was considering the initial appeal on the decedent's estate, on the citation action. And what this court, and what the judge did is we gave notice to Mr. Zavarruca and to Mr. Wemple. There were briefs that were filed. Look at the court's order. The court's order at page two, which is part of the record, the guardian of the estate argues that the Richard V. Henry's prior will of 1999 correctly expresses his known testamentary wishes and is free from the taint of undue influence and fraud. It goes on. Which appeal are you referring to, Mr. Schmidl? Which one of our previous? No, this is the order that Judge Riley entered on August 8, 2008, that this court expressly upheld in Henry IV. And it goes on. It says one of the arguments raised by Peter Wemple at the time that we initially gave the, tried to engage in estate planning is that the 2004 last will and testament is the valid expression of Mr. Henry's intent. He further raises the argument that Mick is guilty of wrongdoing and could be simply excised out of the 2004 will. What does the judge find? Judge Riley found specifically based on the arguments and the submissions of everybody, they weren't precluded from participating in the initial petition for the approval of the trust. Because that's the thing we're down here now. He's already conceded the will. He's not saying he's precluded. So you're arguing against the straw man there. No, he said he was precluded. He said he was precluded from raising any issues relative to the judge's initial authorization of the 2008 documents. While Henry II said that he didn't have standing. In fact, in front of the judge, the judge. He didn't have standing as to the guardianship. Yes. But as to the, he's not contending that at the time that the 2008 will was admitted to probate and he filed the cross petition that he was precluded from presenting any evidence at that time. Instead, what he is saying is that the case law allows him to basically stand mute at that time and still have what he calls a second bite of the apple at the time when he files a will contest. I understand his argument. Let me ask you about his argument. Is your view of the case law different than that? If this was a run-of-the-mill garden variety will and trust contest, the answer might be yes. Yes, he might be right, but it's not. This was a legal issue. All along the way, this was a legal issue. It was a legal issue as to whether or not the guardianship judge had the discretion to do this. If that's your case, then you're saying that while it may be the case that somebody normally would have the opportunity to contest the will after the will was admitted to probate, that something procedurally in this case changes the landscape and that if he relied on the case law that would support his position and relied on what he calls the road map in Henry II that supports his position, that somehow he has been divested of the opportunity to do what he normally would do because of the unique procedural history of this case? He hasn't been divested of anything. What Henry II said is, you've got to wait until Mr. Henry is dead. That's what Henry II says. Okay. Your rights vest, if at all, when he dies. So when he died, they moved to oppose the admission of the 2008 will into probate, arguing that the guardianship judge lacked the discretion under the documents. So that was the legal issue that was presented. He also tried to get in the 2004 document. But haven't you just basically said that it may be the case that in a normal situation he would be permitted to do just what he tried to do in this case? But that's only if there's a factual issue at stake. There's no factual issue here. Well, isn't the factual issue at stake whether or not the 2008 will actually represented the intent of Mr. Henry? Absolutely not. This court in Henry IV, I quote, in this case, this is this court's language from Henry IV, in this case we have a clear measure of Henry's testamentary wishes as expressed in his 1999 will, which he wrote at a time where it is undisputed that he was still of sound mind. It's undisputed in the context of the admission of it to probate because at that point he is, his argument is, he is waiting for the opportunity in a will contest to challenge it. But the fact is that what we're really talking about here in this case is whether his legal position is correct, that the will contest becomes the, gives you an opportunity to deal with that, and whether this court in Henry IV, through its findings, basically preempted that somehow by reaching an issue which he thought he was going to be able to raise more fully in a will contest. Isn't that what this is about? Not exactly. No, because what really happened here, he's conceded the will. So he's conceded counts one and two of his will and trust contest. Let's look what he says in count three. You know, this is the allegations that he made. Nowhere does he mention in his count three allegations anything about the fact of the 1999 will and that this court had already determined and already found, he didn't know it at that time, but that the probation, excuse me, the guardianship judge had already found that the 1999 will represented Mr. Henry's testamentary intent. That's one, he doesn't mention that. What his whole premise is, is that the court failed to consider the 2004 will as the last valid expression of Henry's testamentary intent. Isn't that just another way of raising the same issue, that 1999 wasn't his last intent, that 2004 was? And isn't that really what this is all about? But you've already found that it was. You've already upheld. You've already upheld on Henry IV. You've already held. But was that a necessary finding to allow the admission of the 2004 will, excuse me, 2008 will to probate? Or was it beyond what was necessary for the court to find? And basically what you're saying is that express statement divested him of the opportunity to later challenge what he normally would be able to challenge in a will contest because the wording of the appellate decision went beyond what was necessary to decide the case. Well, first of all, I don't believe that it went beyond what was necessary to decide the case because this court framed the, here's how you frame the issue. Peter Wemple appeals from the trial court's order, admitting the 2008 will of Richard V. Henry, contending that the 2008 will is invalid, and Mr. Henry's 2004 will should have been admitted instead. You go on to say, we first consider Wemple's contention that by authorizing the creation of the 2008 will, the guardianship court exceeded its power under the Probate Act. You went on to hold specifically, we have already concluded pursuant to 11A-18A-5, and under the specific facts of this case, and under the specific facts of this case, that the court acted within its statutory power in authorizing the creation of the 2008 will as a reinstatement of the dispositive provisions of the will he wrote while of sound mind and not under the undue influence of men. You have already framed the issue as to what he, he framed with respect to the admission of the will to probate. He said, the guardianship court lacked the discretion and the authority to do exactly what he did. This court said, no, he did, what he did was valid. Now, if there was a, what happens in a typical, in a, in a more typical, this is totally fact specific to this case. This case has a long involved history, and what happens here is a legal decision was made based upon facts in the initial probate judge, Judge Kennedy, found, well, he had not assumed his discretion. Your basic argument is, he had his opportunity at the time that the 2008 will was admitted to probate, and he should have presented any evidence he wanted to present at that time, and he's, and by not doing it, somehow he's forfeited the chance to do it in a will context. Isn't that in essence what you're saying? That's part of it, but the other thing is, is the legal argument that, what we're dealing with here, again, is simply another legal argument that the guardianship judge lacked the discretion to do what he did in the guardianship case. No, because the guardianship judge basically said that this is what we're going to do during his lifetime. No, what the guardianship judge said was, I'm going to authorize the creation of a will and a trust, and we're dealing only with the trust at this point in time, because it's the trust instrument that distributes Mr. Henry's property. The will merely poured what assets into the trust. But at that time, was he allowed to participate in that? Well, he was alive, but he wasn't able to participate. Was Mr. Wemple allowed to participate in that? And was he allowed to participate in the petition to do the estate planning? Absolutely. No, at the time that the guardianship judge made the ruling that your client could create a new trust. Yes, he absolutely participated. They both participated. They filed briefs in opposition of my request to have the court authorize the execution of the estate plan. Look at the judge's order. That's what I was reading from. They filed briefs. They said, you can't do this. This isn't right. You can't do this. And he heard their briefs. He read their arguments. There is absolutely nothing. Underpinning the court's authority to authorize the 2008 will and trust is a factual finding that Mr. Henry lacked testimony capacity. Wemple is arguing that he had no opportunity to test the finding that the probate court made. He didn't make that specific finding. What he did was, is what the probate act says, is that it allows the probate or the guardianship judge to do anything that the ward could do if present before the court and not under a disability. And what controls is the ward's wishes as best as they can be ascertained. What Judge Riley found after he heard evidence in a citation action that Mr. Henry had been exploited for over four or five years out of $1.3 million and was such an egregious situation that this court upheld punitive damages being entered against the caretaker, what Judge Riley found was that during the period of time that, from 2003 on, he wasn't able to make any decisions about his finances. But what he found was is that the 2004 will that was executed in the midst of the exploitation, right in the middle of all the exploitation that was going on, did not represent what Mr. Henry would do if he was present and before the court and under a disability. He found he would not want to give his property out the way that is contained in the 2004 will. So what does the statute say he had to do? He had to determine what the ward's wishes were as best as they could be determined. And how did he do that? He found that the 1999 will, a will drafted by Mr. Henry himself, a lawyer that disposed of his property to institutions that he favored during his lifetime, like Sloan Kettering, the Mayo Institute, that represented his true intent. Mr. Merkel's argument is that the judge didn't hold any hearing or hear any evidence of what his testamentary capacity, excuse me, what his testamentary wishes were, is simply not the case. He knew exactly what his testamentary wishes found. He found specifically that the 1999 will was representative of his testamentary wishes, something this court upheld. The clear measure of his wishes are contained in the 1999 will. Should Wimple be given an opportunity to say, well there was a lucid moment when this 2004 will was drafted? He hasn't alleged that. He hasn't alleged anything like that in his trust contest. Nothing. What has he alleged? He doesn't allege anything that I can see. He alleges basically a legal conclusion that the court failed to hold a hearing. There's nothing in the statute that says the court had to hold a hearing. That's right. Where is any language in any statute that even suggests that an evidentiary hearing must be held? Zero. None. Absolutely none. There is no citation because it doesn't exist. What it says is it's the ward's wishes as best as they can be determined control. And what he was presented with was a will that he had written himself. Look at the context of this case. This judge was faced with a situation where he said, I am not going to let this will stand and allow this man to be ripped off after death because look at the evidence that I heard. This man was totally demented during this period of time. He was unable to make any financial decisions. The judge didn't say he lacked testamentary capacity. What he said was the 2004 will was nothing but the product of the undue influence of Miroslav Zavoruka. He didn't say he lacked testamentary capacity. You can have testamentary capacity and still have a will be thrown out because of undue influence. He didn't say he lacked testamentary capacity. Well, then do they get the right to say that he had testamentary capacity and that the 2008 will doesn't demonstrate that capacity, his wish or his will? Well, maybe if he alleged it, they might. But even under those circumstances, given the facts of this case, I would say no. He doesn't mention the 1999 will at all. He doesn't mention anything. All he says is the judge failed to find out or consider what Mr. Henry's wishes were. And that's simply not the case. Well, let me ask you this on another issue. You have argued alternatively that we should dispose of this case under FAUC. And you have argued that there was no transcript or record of proceedings, bystanders report, anything to indicate what Judge Coghlan did when she dismissed the petition, the will contest petition. Do you believe that that is a viable alternative for this court in this particular case? If you need to get to it, yes. I mean, look what Judge Coghlan was facing. That's usually the first thing we look at. Yes. Okay. Now, was there a court reporter present or not? No, there was not a court reporter. Whose obligation is that to provide a court reporter if they want to have a record of proceedings to challenge it on appeal? Well, that was part of my point was that they had to. Well, I'm asking you that question. The person bringing the appeal has the obligation to make sure that the court has a complete record. All right. Well, who all was at this hearing when Judge Coghlan dismissed the will contest? All three of us. All right. And no court reporter was present? Correct. And no bystanders report? No bystanders report was submitted. And were there arguments of counsel? Well, there's a dispute amongst us. Yes. This is what I remember happening, okay? And I can tell you, even though there was no bystanders, we waited around. Mr. Slick and I were in court. We waited around for Mr. Glavinskas for a while. We came up. I had submitted a request for a hearing to Judge, which is in the record, for Judge Coghlan, telling her that I thought that Henry IV disposed of the issues. I started to argue very briefly. She said, you know, there's no court reporter here. I said, I know there's no court reporter here. She said, do you really want to go on? I said, well, I want to say my position, my position is that Henry IV controls. And she said, I agree. That's my memory of what occurred. Now, that's, you know, and so that's my memory of what occurred. Was there a large, extensive argument? No. Was there an attempt to begin that argument? Did she cut to the chase? But you're saying that at that hearing she indicated that she agreed with you that Ford disposed of this. Yes. And that's not in the record. That's correct. And whose burden is it here to present to us what Judge Coghlan ruled when she decided to dismiss this as a matter of law? They're trying to overturn it. It's their obligation to submit a complete record. All right. Anything further at this time? Any questions that the court has, I'd be happy to answer. Thank you. Mr. Glavinskas. Just briefly with respect to the issue of a transcript, there was no argument. The counsel did wait for me to come. I was in another courtroom. I showed up. Well, how do we know that? Because you're saying it and because he said it? Yes. Whose burden is it here at this court to present to us a complete record of proceedings? Mine, and I believe we have presented a complete record of proceedings because there was no argument before the court. So there is no bystander's report or transcript because there was no court reporter. Well, don't we presume in the absence of a transcript that the court ruled correctly? Not necessarily, and that presumption can be overcome. By what? And I believe we have overcome it. By what? How have you overcome the presumption that the court acted properly when she dismissed the petition? Within our argument. I think we have a legal right to proceed on the will contest. No, but there's a presumption that when you don't present a transcript or bystander's report or something to indicate the reasons of the court that we presume the court entered a decision in conformity with the law. How have you overcome that when you haven't presented any record of the proceedings that occurred in front of Judge Coughlin when she dismissed this? There is no record of proceedings to be presented. That's just the fact. She came out, she signed the order, entered the order, said I'm granting the motion to dismiss, signed the order, and that was it. All right, well, just one other question I want to ask you again. Now, generally speaking, there is this principle that you can have two bites at the apple. In other words, a probate hearing to admit the will, and then subsequently this will contest. Now, have you cited any case with a procedural history like this where there was a cross petition asking to admit another will to probate at the same time that the other will that eventually the court admitted, is there any case like this factually? Not precisely factually, but there are cases involving hearings for formal proof of will where limited issues can be raised and evidence presented on those limited issues, and this court and the Supreme Court have consistently held that an action on formal proof of will doesn't preclude a will contest. Again, a will contest, you're able to relitigate everything with respect to the admission of the will to probate. It's a new proceeding. It's a clean slate. Can this court or can we permit you to relitigate a finding by the guardianship court that Mr. Henry essentially had no ability, he was not competent, he was not capable, to do anything with his assets after 2003? I don't think you're permitting me to relitigate. You're giving my client the opportunity to litigate that for the first time because Judge Riley's holding with respect to the estate plan petition was that my client lacked standing to challenge the creation of the estate plan documents. So even if we tried to present evidence, it wouldn't have mattered because we didn't have standing to do that, according to Judge Riley, as was affirmed by this court in Henry II. And again, the roadmap said, you're right, at the time that that order was entered, you didn't have standing to contest the creation of those documents. Your time will come after Mr. Henry dies. Then you have the opportunity under a will contest to contest all of those issues. That's what we're doing. That's all that we're doing. That's all that we're asking for the opportunity to do. What were you doing when the guardianship court allowed the creation of the trust? You just did nothing? No, we challenged it, and we were found not to have standing to challenge it. We attempted to challenge it. Did the trial court allow you to challenge it? It allowed us to file briefs in opposition to the petition to create the estate plan, and then it held that we didn't have standing to challenge the creation of the estate plan. That was Henry II. I'm not sure I really understand what the court was doing then when it allowed this estate plan to go forward. What were the issues that the court was deciding? How could it allow an estate plan to go forward without deciding what Henry, Mr. Henry wanted for his estate? I don't understand. You're acting as if the court never really delved into his capacity or whether these were his wishes or what. Why would the court allow this will to be created if it didn't decide any of this? It didn't decide it in the context of the estate plan petition. It used its rulings from the citation proceeding that, again, my client was not allowed to participate in to allow the guardian to create these documents. And then it said you don't have standing to challenge the creation of these documents. Judge Riley himself said your time will come when a will contest happens. This court then agreed that we didn't have standing and again said your time will come when a will contest is right. A will contest is right. We filed it timely. All we're looking for is the opportunity to litigate those issues. Counsel said that you never raised that factual issue. You only presented legal defenses and you actually never contested the finding of the court regarding the capacity of the deceased. We were found not to have standing to do that. Did you ever file anything in which you did allege before standing was challenged? Before standing was challenged, no. No. Well, we opposed the creation of the estate plan documents on the same basis, that we believe that Mr. Henry had testamentary capacity in 2004 and that the 2004 documents are his valid testamentary documents. And the court ruled against you essentially and found that those were not his wishes. Did it not? The court ruled that we didn't even have standing to make that argument. So its ultimate ruling ended up being against that conclusion. However... Weren't these issues that could have been decided and weren't they really essentially decided when the court allowed this estate plan to be created with the 2008 will? With respect to the creation of the documents, yes, those issues were decided. But with respect to my client's ability to challenge those documents, no. That was punted until now. And now we've received the punt and we want to start running up the field and litigating. What were you doing at that proceeding? We were challenging the creation of the 2008 documents. Based on what? Based on Mr. Henry's testamentary intent being contained within the 2004 documents. So you've really already had this issue decided. You just said it. If you heard your own words on this record, you've stated that that's what you did challenge when the court created or allowed the creation by Chase for the 2008 will, trust, and codicil. Except at that time my client was found not to have standing to pursue that challenge. By this court or by the trial court? Both. Okay. Both. All right. Thank you. Anything further? All right. The case will be taken under advice.